Michael W. CHARLTON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 84S00–9608–CR–00570.

Supreme Court of Indiana.

Dec. 7, 1998.

1046

Eugene C. Hollander, Special Assistant to the Office of the State Public Defender, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

On August 28, 1995, defendant Michael Charlton was charged with killing his girlfriend, Deborah Carpenter. Defendant appeals his conviction of Murder [1] and sentence of sixty years. We affirm both.

This Court has jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. 7, § 4; Ind.Appellate Rule 4(A)(7).

### Background

Defendant and the victim lived together for approximately two and one-half years.

---

1. Ind.Code § 35–42–1–1 (1993).

On August 21, 1995, the victim called defendant at work and told him that because they were having problems she had placed all of his belongings on the front porch for him to pick up later. She also advised him that she was planning to secure a protective order against him that day. Defendant did pick up his possessions and later that evening, he and the victim met at a neutral location to talk about their separation.

On August 22, 1995, the victim had her family over for dinner and spoke to defendant over the phone on at least one occasion. The victim's son left around 9 pm and she took her daughter and grandson home around 11:30 pm.

During trial, the defendant testified that the victim called him at his parents' home around 4 am on August 23, 1995, and invited him to come over. Defendant allegedly walked to the victim's house, talked with her, and the two subsequently had sexual intercourse on the couch. Then, according to defendant, after the two got dressed, the victim came towards him as if to give him a hug but instead reached behind and grabbed his gun. Defendant testified that during the struggle to get the loaded gun away from the victim, the gun accidentally discharged and hit the victim in the head. Defendant alleges that he left the victim's home and went straight to his parents' home to discuss the morning's events. Several hours later, the defendant turned himself in to the police.

Additional facts will be provided as necessary.

### Discussion

Defendant raises four issues on appeal: (1) whether the trial court erred in not instructing the jury on a lesser included offense; (2) whether the trial court erred by allowing testimony regarding the victim's application for a protective order; (3) whether the prosecutor's comments during closing argument constituted prosecutorial misconduct; and (4) whether the defendant's sixty-year sentence is manifestly unreasonable.

## I

■ Defendant contends that the trial court committed reversible error by denying his proposed jury instruction on the lesser included offense of reckless homicide.[2] We set forth in *Wright v. State,* 658 N.E.2d 563 (Ind.1995), the proper analysis to determine when a trial court should, upon request, instruct the jury on a lesser included offense of the crime charged. Three steps are involved: (1) a determination of whether the lesser included offense is inherently included in the crime charged; if not, (2) a determination of whether the lesser included offense is factually included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute existed whereby the jury could conclude the lesser offense was committed but not the greater. *Id.* at 566–67. If the third step is reached and answered in the affirmative, the requested instruction should be given.

■ When the trial court has made a finding on the existence or lack of a "serious evidentiary dispute," our standard of review is abuse of discretion. *See Champlain v. State,* 681 N.E.2d 696, 700 (Ind.1997). However, if the trial court makes no ruling with respect to whether a "serious evidentiary dispute" exists, *"Wright* implicitly requires the reviewing court to make this determination de novo based on its own review of the evidence." *Champlain,* 681 N.E.2d at 700. In this case, the trial court simply refused the defendant's tendered Reckless Homicide instruction and made no finding regarding whether a serious evidentiary dispute existed.[3] Additionally, defendant's tendered in-

struction contained no explanation as to why a serious evidentiary dispute existed, nor does defendant direct us to the record where he explained to the trial court the existence of such a dispute. "[W]hen the court rejects tendered instructions on lesser included offenses on their merits, but the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of that dispute, the standard of review is an abuse of discretion." *Thomas Brown v. State,* No. 82S00–9609–CR–603, slip op. at 16 (Ind. Dec. 3, 1998). We review this case accordingly.

■ The defendant was charged with Murder. Indiana's Murder statute provides in relevant part that "[a] person who ... knowingly or intentionally kills another human being ... commits Murder, a felony." Ind.Code § 35–42–1–1 (1993). Indiana's Reckless Homicide statute provides that "[a] person who recklessly kills another human being commits reckless homicide, a Class C felony." Ind.Code § 35–42–1–1 (1993). A comparison of these two statutes indicates that Reckless Homicide is an inherently lesser included offense of Murder; the only distinguishing factor between Reckless Homicide and Murder is the lesser culpability. *Wright,* 658 N.E.2d at 567. *See Horan v. State,* 682 N.E.2d 502, 507 (Ind.1997).

■ The final step of the *Wright* analysis requires the court to determine whether a serious evidentiary dispute existed warranting a Reckless Homicide instruction. Ind. Code § 35–41–2–2(c) (1993) provides that "[a] person engages in conduct 'recklessly' if he

---

**2.** The record does not reflect that the defendant objected to the court's refusal to give his tendered instruction on Reckless Homicide. Ordinarily, in order to preserve an error for review, a party must "state distinctly the matter to which he objects and the grounds of his objection." *See* Ind. Trial Rule 51(C); Ind.Crim. Rule 8(H). However, "[a]n objection to a rejection of a properly tendered instruction is not required and if made need not be detailed or distinct to preserve the error for appeal." *Thomas Brown v. Indiana,* No. 82S00–9609–CR–603, slip op. at 13 (Ind. Dec. 3, 1998).

**3.** Neither the State nor the defendant provides a record citation indicating that a discussion of the jury instructions took place. The defendant merely cites to a court order in which the jury

instructions were refused. In this order, the court made the following relevant statements:

> Prior to commencement of trial this date, counsel met in chambers with this Judge and State of Indiana tendered no written instructions. Defendant, by counsel, submitted three (3) written final instructions. State of Indiana objects to the reading of Defendant's instructions, and Court indicates none of Defendant's instructions will be read to the jury. Court further indicates Court's final instructions numbered one (1) through seventeen (17) will be given except for Court's final instruction numbered eleven (11). Further, Courts final instruction numbered two (2) is given as amended.
>
> (R. at 71.)

engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." In support of his position, defendant makes the following argument:

> The Defendant argues that the evidence presented at trial raised a serious evidentiary dispute regarding the element of intent, and the trial Court committed reversible error by not instructing the jury regarding Reckless Homicide. The Defendant committed the shooting. He reported the shooting. He admitted to the shooting. The Defendant testified during the trial regarding the fact that the gun accidentally fired while the parties were struggling.

Br. of Def.-Appellant at 15–16. While these facts do call into question defendant's intent, they present absolutely *no evidence of reckless* conduct—they present evidence of an accident or, at most, negligence. Defendant has not presented or referred us to any evidence showing that his conduct was reckless, much less showing that there was a serious evidentiary dispute over whether his conduct was reckless.

On the other hand, the evidence presented by the State all supported its contention that defendant "knowingly" or "intentionally" killed the victim:

1. On the morning of August 22, 1995, the defendant told a co-worker that he was going to kill the victim and himself.

2. The defendant testified that the victim telephoned him at his parents' house around 4 am on August 23, 1995, and invited him to come over. The defendant claimed that he walked to the victim's house. However, the victim's son testified that while he was at work, the defendant drove by around 4:30 am to inquire whether his sister was still at the victim's house. Additionally, one of the victim's neighbors testified that on August 23, 1995, he noticed defendant's truck parked on the street at 4:30 am and that the truck was

still there when he left for work around 5:45 am.

3. The defendant never called for emergency help and did not turn himself in to authorities until several hours after the shooting.

4. The coroner testified that the victim died of a contact wound which means that the gun was held against the skin when it was fired and not from a distance.

5. A few hours after the police had discovered the victim's body and left the house, the daughter noticed that the telephone lines had been cut and that the back door had been damaged and that there were paint fragments and wood shavings on the floor. The police had not made these observations earlier during their investigation of the house.

Given this evidence, there was no serious evidentiary dispute that defendant recklessly killed the victim. The trial court did not abuse its discretion when it refused the Reckless Homicide instruction.

## II

Defendant contends that the trial court erred in admitting evidence that the victim had attempted to obtain a protective order against the defendant. We disagree.

■ Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ..." When a defendant objects to the admission of evidence on the grounds that it would violate Rule 404(b), the following test is applied: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[4] *Thompson v. State*, 690

---

4. Ind.Evidence Rule 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

N.E.2d 224, 233 (Ind.1997). *See Hicks v. State,* 690 N.E.2d 215, 221 (Ind.1997); *Heavrin v. State,* 675 N.E.2d 1075, 1083 (Ind. 1996), *reh'g denied; Taylor v. State,* 659 N.E.2d 535, 543 (Ind.1995); *Hardin v. State,* 611 N.E.2d 123, 128–29 (Ind.1993). "The well established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Thompson,* 690 N.E.2d at 233 (citing *Hardin,* 611 N.E.2d at 129).

Two witnesses—the victim's daughter and Lee Ann Riesenbeck, a resource advocate for the local counsel on domestic abuse—testified that two days before the murder, the victim requested that a protective order be issued against the defendant. Defendant objected to the testimony of both of these witnesses.[5] The victim's daughter testified that the "[victim] wanted to get a Protective Order against [the defendant]—because he had been harassing her—and threatening to—threaten her." Riesenbeck testified that when the victim came to her office to file an application for a protective order, she was crying, shaking, scared and was so upset that she could not fill the forms out.[6]

 We agree with the State that testimony regarding the protective order was admitted to show defendant's motive for committing the murder and not to create an inference that defendant acted in conformity with his prior bad acts. *See Bacher v. State,* 686 N.E.2d 791, 799 (Ind.1997) (motive is relevant to proof of a crime and evidence of jealousy and overprotectiveness can be a motive for murder); *Haggenjos v. State,* 441 N.E.2d 430, 431 (Ind.1982) (defendant's jealous behavior after wife filed for divorce was admissible as evidence of motive for killing). Prior actions to show motive, intent, or other proper purposes are admissible. *Hicks,* 690 N.E.2d at 219; *Bacher,* 686 N.E.2d at 799. There have been numerous cases in which we have held proper the admission of evidence

showing the relationship that existed between the defendant and the victim. *See, e.g., Hicks,* 690 N.E.2d at 222 (citing *Ross v. State,* 676 N.E.2d 339, 346 (Ind.1996); *Elliott v. State,* 630 N.E.2d 202, 204 (Ind.1994); *Price v. State,* 619 N.E.2d 582, 584 (Ind. 1993)). *See also Campbell v. State,* 622 N.E.2d 495, 500 (Ind.1993). The evidence relating to the protective order was for the purpose of proving defendant's motive.

 We next proceed to determine whether, under the second prong of the 404(b) test, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. In undertaking such a review, we use an abuse of discretion standard. *Hicks,* 690 N.E.2d at 223 (citing *Mayberry v. State,* 670 N.E.2d 1262, 1268 (Ind. 1996), *reh'g denied ). See Johnson v. State,* 655 N.E.2d 502, 505 (Ind.1995). We do not find that any prejudicial impact from the evidence relating to the Protective Order substantially outweighed its probative value. We provide two reasons for our determination.

 First, as we stated *supra,* the testimony was relevant to show the hostile relationship that existed between defendant and the victim in order to prove motive for the murder. This evidence was even more significant in light of the fact that the protective order was sought just two days prior to the murder. Second, this evidence was admitted only after the State presented the testimony of two of defendant's co-workers whose testimony was far more damaging than the protective order evidence. Pam Stuthers, testified that she overheard defendant's conversation with another co-worker. Stuthers heard defendant say, "[t]hat if he'd been there he'd have killed her." Stuthers also commented that the defendant was talking about committing suicide. The other co-worker, William Gregory, testified that after defendant received a phone call at work from the victim informing him that his be-

---

5. Defendant filed a Motion to Suppress evidence regarding the application for a Protective Order with respect to Lee Ann Riesenbeck's testimony but not the victim's daughter's testimony.

6. After Riesenbeck completed the protective order application for the victim, she advised the

victim that she had to go to the police station and fill out a police report. For reasons unknown, no protective order was ever issued. Additionally, the victim's application for a protective order could not be located.

longings were outside on the front porch, the defendant "got mad and came back in the kitchen and started throwing stuff around, cussing and swearing." The co-worker also testified that while working the next day (the morning prior to the murder), the defendant told him "[t]hat he was going to kill her and kill hisself" [sic] and that "[h]e was going to take her down." In light of this other damaging evidence, we find no error in the admission of protective order evidence.[7]

### III

■ Defendant complains that the prosecutor engaged in misconduct in closing argument in several respects: (i) that the prosecutor implied that he had superior knowledge to the jury concerning the facts in the case; (ii) that the prosecutor suggested that the defendant controlled, manipulated or dominated the victim even though such evidence was never presented at trial; (iii) that the prosecutor insinuated that the State somehow controlled the jury selection process; and (iv) that the prosecutor referred to defendant's confession to the police even though such statements were never disclosed to the jury. Finally, defendant briefly identifies some additional arguments made by the prosecutor which he characterizes as being "filled with hyperbole and innuendo." Defendant neither objected at trial nor sought an admonishment. Ordinarily, a failure to object would cause the issue to be waived. *See Isaacs v. State*, 673 N.E.2d 757, 763 (Ind.1996). Consequently, defendant argues that the errors were fundamental or, in the alternative, that counsel's failure to object constituted ineffective assistance of counsel.

■ Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process. *Borders v. State*, 688 N.E.2d 874, 882 (Ind.1997). (citations omitted). *See Wrinkles v. State*, 690 N.E.2d 1156, 1171 (Ind.1997) ("claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision"). The error must be so prejudicial

to the rights of a defendant as to make a fair trial impossible. *Id.* (citations omitted). "For prosecutorial misconduct to be fundamental error, it must be demonstrated that the prosecutor's conduct 'subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision.'" *Carter v. State*, 686 N.E.2d 1254, 1262 (Ind. 1997) (quoting *Isaacs*, 673 N.E.2d at 763). *See Borders*, 688 N.E.2d at 879. The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Borders*, 688 N.E.2d at 879 (citing *Kent v. State*, 675 N.E.2d 332, 335 (Ind.1996)) (citations omitted).

■ While we agree with defendant that some of the prosecutor's statements complained of may have pushed the bounds of zealous advocacy, we find nothing about the statements to be so egregious as to rise to fundamental error. Additionally, the failure to object could well have been a strategic decision by counsel. *See Bannowsky v. State*, 677 N.E.2d 1032, 1035 (Ind.1997) (counsel's failure to object to prosecutor's improper voir dire questions was "consistent with a reasonable choice of defense tactics and strategy" which was "the desire to avoid focussing the juror's attention upon the prosecutor's questions"). "Judicial scrutiny of counsel's performance is highly deferential; we eschew second-guessing the propriety of trial counsel's tactics." *Canaan v. State*, 683 N.E.2d 227, 231 (Ind.1997). *See Potter v. State*, 684 N.E.2d 1127, 1133 (Ind.1997) ("A reviewing court must grant the trial attorney significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best."). Strategic decisions do not amount to ineffective assistance of counsel. *See Potter*, 684 N.E.2d at 1133 (failure to object is not ineffective assistance of counsel "if counsel's failure to object was the result of trial strategy"); *Smith v. State*, 689 N.E.2d 1238, 1244 (Ind.1997) (quoting *Garrett v. State*, 602 N.E.2d 139, 142 (Ind.1992)) ("Tactical choices by trial counsel do not establish ineffective assistance of counsel even though such choices may be

---

**7.** The defendant also testified that the victim advised him that she was seeking a protective order against him. We do not comment on the effect of defendant's testimony recognizing that defendant may not have testified to knowledge of the protective order had the State not already elicited evidence introducing the existence of such order.

subject to criticism or the choice ultimately proves detrimental to the defendant."). We hold that the prosecutor's comments during closing argument did not constitute fundamental error and that trial counsel was not ineffective for failing to object thereto.

## IV

■■■ Defendant contends that his sixty year sentence is manifestly unreasonable. Sentencing lies within the discretion of the trial court. *See Battles v. State,* 688 N.E.2d 1230, 1235 (Ind.1997) (citing *Mayberry,* 670 N.E.2d at 1270); *Blanche v. State,* 690 N.E.2d 709, 714 (Ind.1998); *Archer v. State,* 689 N.E.2d 678, 683 (Ind.1997), *reh'g denied; Morgan v. State,* 675 N.E.2d 1067, 1072 (Ind. 1996). This Court will not revise a sentence unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Const. art. VII, § 4; Ind. Appellate Rule 17(B)(2). *See Blanche,* 690 N.E.2d at 714; *Page v. State,* 689 N.E.2d 707, 712 (Ind.1997); *Birdsong v. State,* 685 N.E.2d 42, 48 (Ind.1997); *Poulton v. State,* 666 N.E.2d 390, 393 (Ind. 1996).

■■■ The trial court enhanced defendant's sentence from the presumptive sentence of fifty-five (55) years, Ind.Code § 35–50–2–3 (Supp.1995), to sixty (60) years. The trial court has authority to enhance a presumptive sentence up 10 years due to aggravating circumstances or reduce the presumptive sentence by as many as 10 years for mitigat-ing circumstances. Ind.Code § 35–50–2–3 (Supp.1995). When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances. *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1086 (Ind.1996)).

■■■ The trial court found three aggravating circumstances.[8] The court also commented on proffered mitigating circumstances. Although the trial court did not articulate specifically that the aggravating circumstances outweighed the mitigating circumstances, it is clear that the trial court did engage in a balancing process (*see* footnote 8). *See e.g., Mitchem,* 685 N.E.2d at 679. We find the sentencing statement to be satisfactory and the sentence itself not manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

8. The trial court provided the following sentencing order:

The Court having heard the testimony of witnesses and arguments of counsel, it is now found the Defendant Charlton is 32 years of age. In considering the Defendant's prior criminal history, Court finds there are eight (8) misdemeanor convictions which are not taken by the Court to be insignificant and not mitigating factors as claimed by defense counsel, but are, in fact, aggravating factors. The circumstances of the crime herein are in and of themselves aggravating.

Court finds this was a violent crime by a shot to the top of the head of the victim, breaking and entering, and intent to commit this offense over a period of time. Court finds the Defendant has had a problem with violent and aggressive behavior in the past, not only with this instant victim, but with a prior victim, Betty Wilkie, and apparently even at home in a physical striking of his mother.

Court also notes the Defendant is a steady dependable worker and held a job, and that the family of the victim and the family of the Defendant cared about the victim as they testified. This seems to be a case like so many of the domestic murders of "if I can't have you no one else can." Defendant has difficulty in suppressing his emotions and not dealing with them in a rational manner. There is, however, some evidence that in many cases of domestic situations the real threat is towards those closest to the perpetrator and not a threat to society.

IT IS THEREFORE THE CONCLUSION OF THE COURT after weighing the facts and circumstances that the Defendant shall be sentenced to the Indiana Department of Correction for the presumptive sentence of fifty-five (55) years plus an additional five (5) years enhancement for a total of sixty (60) years.... (R. at 112–13.)