Curtis Tyrone **ELLISON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–9901–CR–2.

Court of Appeals of Indiana.

Oct. 4, 1999.

Transfer Denied Dec. 7, 1999.

---

Marce Gonzalez, Jr., Merrillville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

KIRSCH, Judge

After a jury trial, Curtis Tyrone Ellison was convicted of murder,[1] and two counts of attempted murder.[2] He now appeals, raising the following issues for review:

I.  Whether the prosecutor's comment in closing argument that Ellison was a "murderer" constituted prosecutorial misconduct.

II.  Whether the trial court abused its discretion in sentencing Ellison.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On September 1, 1997, Dalwin Brown, Eric Bridgeman, Glen Spates, and Dwain Millinder were at Woodmar Mall in Hammond, Indiana. They saw Ellison, who was a friend of Bridgeman but disliked

---

1.  *See* IC 35–42–1–1.

2.  *See* IC 35–41–5–1 and 35–42–1–1.

Brown. The four approached Ellison, and a fight ensued. Ellison threatened Brown and left. That evening, Brown was walking home with a friend when he saw a car and heard gunfire. He saw Ellison in the car and was shot in the leg. At about the same time, Spates and Bridgeman were riding in Bridgeman's car in the same area. Spates saw a car approaching and heard gunshots. Bridgeman was shot and killed.

Ellison was charged with Bridgeman's murder, the attempted murders of Spates and Brown, battery, and criminal recklessness. The jury convicted him of murder and two counts of attempted murder. The trial court sentenced Ellison to forty-five years imprisonment for murder and twenty years each for the attempted murders. The court ordered the sentence for the attempted murder of Spates to be served concurrently to the murder sentence, and the sentence for the attempted murder of Brown to be served consecutively, for a total sentence of sixty-five years. Ellison now appeals.

## DISCUSSION AND DECISION

■ Ellison first argues that he was denied a fair trial because of the prosecutor's misconduct. Specifically, he contends that the prosecutor committed misconduct by calling Ellison a murderer. At one point in his closing argument, the prosecutor stated, "Ladies and gentleman, see that face right there? That's the face of a murderer." *Record* at 602. And later, he stated, "This guy right here murdered someone on September 1, 1997. He murdered Eric Bridgeman ... He's a murderer and you should not let him walk. He should be convicted of being a murderer and I'm going to ask you to do that right now." *Record* at 620–21.

■ Ellison recognizes that he has waived his argument by failing to object to the prosecutor's comments at trial. Nonetheless, he claims that the prosecutor's comments constitute fundamental error. Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair and depriving the defendant of fundamental due process. *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998). For prosecutorial misconduct to be fundamental error, it must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Id.* (quoting *Carter v. State,* 686 N.E.2d 1254, 1262 (Ind.1997)). The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.*

■ It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence. *Hollowell v. State,* 707 N.E.2d 1014, 1024 (Ind. Ct.App.1999). However, Rule 3.4(e) of the Rules of Professional Conduct prohibits a lawyer from stating a personal opinion about the guilt or innocence of an accused. The tension between these two rules has been the subject of some debate.

In *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the supreme court addressed the issue of when the prosecutor's duty to vigorously prosecute gives way to the rule that a lawyer must not express personal opinions about the guilt or innocence of an accused. The court commented, "[t]he line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *Id.* at 7, 105 S.Ct. at 1042. In *Young,* the prosecutor commented that it was his personal impression that the defendant intended to commit fraud. He also responded to the defense's argument by stating, "I don't believe it." *Id.* at 6, 105 S.Ct. at 1041. The court stated that, "[t]he kind of advocacy shown by this record has no place in the administration of justice and should neither be permitted nor rewarded," *id.* at 9, 105 S.Ct. at 1043, but held that the clearly improper comments did not constitute fundamental error. The court determined that the comments had

been invited by the defense counsel's own improper closing argument. *Id.* at 17, 105 S.Ct. at 1047.

Some courts have held that it is within the bounds of fair comment by prosecutors to refer to defendants by prejudicial epithets. *See People v. Thomas,* 2 Cal.4th 489, 7 Cal.Rptr.2d 199, 828 P.2d 101 (1992) (not misconduct to call defendant "mass murderer," "rapist," "perverted murderous cancer," "walking depraved cancer" in closing arguments of penalty phase of trial); *State v. Vann,* No. 98–1912–CR, 1999 WL 689400 (Wis.Ct.App. Sept.7, 1999) (prosecutor's actions in calling defendant a "punk" not misconduct). Other courts have held that while such comments are improper, they do not ordinarily justify reversal. *See United States v. Lacayo,* 758 F.2d 1559 (11th Cir.1985) (prosecutor's remarks that defendant is "guilty of the crimes of which he is charged" while not reversible, create serious problems and should be avoided); *State v. Trostle,* 191 Ariz. 4, 951 P.2d 869 (1997) (prosecutor's misconduct calling defendant a coward, liar, pervert, rapist, and murderer in opening statement while improper, did not deny defendant a fair trial); *State v. Oehman,* 212 Conn. 325, 562 A.2d 493 (1989) (prosecutor's misconduct in calling defendant a liar, coward, spoiled killer with a gun, and an individual with no principles did not deny defendant a fair trial where the evidence at trial supported such comments).

By contrast, courts have reversed convictions in cases where the prosecutor's expressions of personal belief in the defendant's guilt imply that the prosecutor possesses special knowledge or are made intentionally. For example, in *Quinlivan v. State,* 579 So.2d 1386 (Ala.Crim.App.1991), the court reversed the defendant's conviction because of prosecutorial misconduct. The prosecutor stated that he chose which cases to prosecute and was proud to be prosecuting this case because it was his duty to prosecute the guilty and protect the innocent. The court called the prosecutor's comment "nothing more than a bla-tant statement of his personal belief in the appellant's guilt," *id.* at 1388, and noted that such comments suggest that the criminal justice system had already predetermined the defendant's guilt based on evidence not before the jury. Reiterating that it is improper for an attorney to state his or her personal beliefs about the credibility of witnesses or the guilt or innocence of an accused, the court held that the prosecutor's misconduct denied the defendant a fair trial.

In *State v. Bujnowski,* 130 N.H. 1, 532 A.2d 1385 (1987), the prosecutor commented in closing argument that the defendant's wife's testimony was false. He then corrected himself, and was admonished by the trial court that such comments were improper. In spite of this, he then repeated this sentiment throughout his closing argument and concluded by stating, "I think [the defendant is] guilty." *Id.* at 1386. The court reversed the defendant's conviction based on this prosecutorial misconduct. It noted that it did not decide whether the initial violation would have required reversal. However, the prosecutor's repeated violations after being warned by the judge and noting his own error amounted to "intentional, repetitive misconduct" that rendered the court's curative instruction meaningless. *Id.* at 1388. *See also State v. Stewart,* 253 Mont. 475, 833 P.2d 1085, 1089–90 (1992) (prosecutor's conduct improper in referring to defendant in closing arguments as a "crooked cop," "crook," "thief," and "liar;" cautioning prosecutors to stop personal expressions of opinion as to the credibility of witnesses or the guilt or innocence of the accused).

Here, we have none of circumstances present in *Quinlivan* or *Bujnowski.* Certainly, the prosecutor's comments in this case fall into the "gray area" between fair comment and personal expressions of belief. Prosecutors who enter this area do so at their own peril, risking both mistrial and appellate reversal solely as a result of their advocacy.

We hold, however, that the prosecutor's comments in this case were not fundamental error. The prosecutor's conduct in referring to Ellison as a "murderer" implied that he believed that Ellison was guilty. However, the probable impact of the prosecutor's reference was slight. The evidence against Ellison was strong. A security guard overheard Ellison threaten the victims at the shopping mall after the fight ended. Several eyewitnesses identified Ellison as the shooter. The car that the eyewitnesses identified as the one in which the shooter was riding was owned by Ellison's brother. In light of this evidence, the impact of the prosecutor's comments was negligible. Further, before closing arguments began, the judge addressed the jury as follows:

"As we indicated, we have reconvened for what we term the final arguments. You will recall at the beginning of the trial, the attorneys had an opportunity then to talk to you to tell what they believed the evidence would be during the trial. Now at the end of the trial they will talk to you again and make what we will call their final argument. They will recall what occurred for you during trial. They will interpret what occurred during the trial from their points of view. You are the trier of fact. If your recall of what occurred during the trial should differ with either or both attorneys, you are to rely upon your collective recall. Nor are you bound by their interpretation. Is that clear to everybody? This is final argument. You are the fact finder. They attempt to persuade you to their points of view. Do you understand?"

*Record* at 600–01. Thus, the jury was instructed about the proper use and consideration of the prosecutor's argument. Further, the prosecutor's comments were not coupled with insinuations of special knowledge not presented to the jury, nor were they made willfully after warnings by the trial court. The prosecutor's comments did not deprive the defendant of due process and do not amount to fundamental error. *See Brennan v. State*, 639 N.E.2d 649, 652 (Ind.1994) (prosecutor's reference to defendant in closing argument as "cold-blooded killer" did not place defendant in a position of grave peril).

Ellison next argues that the trial court relied on improper aggravating circumstances to impose consecutive sentences. Sentencing decisions rest within the sound discretion of the trial court. *Sherwood v. State*, 702 N.E.2d 694, 699 (Ind.1998). When enhancing a sentence, a trial court must state its specific reasons for doing so. *Jones v. State*, 705 N.E.2d 452, 454 (Ind.1999). Accordingly, the sentencing statement must: 1) identify significant aggravating and mitigating circumstances; 2) state the specific reason why each circumstance is aggravating or mitigating; and 3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances. *Id.* To impose consecutive sentences, the trial court must find at least one aggravating circumstance. *Sherwood*, 702 N.E.2d at 699.

Ellison argues that the trial court imposed consecutive sentences because the victim of one of the attempted murders, Dalwin Brown, was shot and wounded. He contends that this is improper because a trial court cannot use an element of the offense of attempted murder as charged in the information to validly enhance a sentence. *See Townsend v. State*, 498 N.E.2d 1198 (Ind.1986). However, a trial court may consider the nature and circumstances of the crime when sentencing a defendant. IC 35-38-1-7.1(a)(2). The trial court's sentencing statement demonstrates that the trial court did so here. The trial court stated that this was a pointless, senseless crime that began as a slight confrontation, but escalated into random gunfire on a public street by Ellison's choice. The court noted that Ellison's actions could have resulted in three deaths. Because the nature and circumstances of

the crime is a proper and sufficient aggravating circumstance, the trial court did not abuse its discretion here.

We further note that the trial court cited Ellison's juvenile record as an additional aggravating circumstance. This too is a valid aggravator. IC 35–38–1–7.1(b)(2). Although Ellison challenges the use of his juvenile record as an aggravating factor because he claims that his prior delinquent activity is too old to be relevant, we disagree. Ellison's prior delinquency adjudication was less than ten years old. Further, the prior offense was also an act of violence against a person. This was a proper aggravator.

Affirmed.

DARDEN, J., and BROOK, J., concur.