**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**B. JOSEPH DAVIS**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 33A01-1306-CR-266 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause No. 33C01-1209-FC-93

**December 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jerry Johnson appeals his conviction for Class C felony battery resulting in serious bodily injury, arguing that the prosecutor committed misconduct and that he received ineffective assistance of counsel. Finding that the prosecutor's statements during closing argument were not misconduct and that Johnson received effective assistance of counsel, we affirm.

**Facts and Procedural History**

In May 2012, Thomas Carpenter and his girlfriend Shawn York went to Lovell's Lounge in New Castle, Indiana. Carpenter's friend was playing in the band at Lovell's Lounge that evening and invited him to come hear the band play. Carpenter and York entered the east side of the bar at approximately 1 a.m. As Carpenter looked around to see if he could find the people who invited him, he heard Johnson yell, "you're stupid for coming in here." Tr. p. 68.[1] Approximately two months before, Johnson had threatened to hurt Carpenter if he returned to Lovell's with York. As Carpenter turned his head, Johnson, who was there with a date, hit Carpenter with his fist in Carpenter's left jaw, causing Carpenter to fall down. Once on the ground, Johnson kicked Carpenter with his boots, shattering his left eye. Carpenter grabbed Johnson's heel to prevent him from continuing to kick. According to York, Johnson was on top of Carpenter, punching him multiple times.[2] Moments later, the bartender, Jonathon Perkins, grabbed Carpenter to

---

[1] York testified that Johnson said, "[w]hat do you think you're doing here?" Tr. p. 100.

[2] York did not see Johnson punch Carpenter, but she saw Johnson's "elbow come up and go back down more than once." Tr. p. 100.

separate the fight. Carpenter began bleeding profusely and his face was covered in blood. Carpenter and York then walked out the west entrance of the bar. *Id.* at 102.[3]

Once outside, Jeremy Lovell, the owner of the bar, noticed that Carpenter was "bleeding from his face." *Id.* at 150. Ashley Gard, Lovell's fiancee, told York to take Carpenter to the hospital. York then drove Carpenter to the emergency room at Henry County Hospital. The doctors in the emergency room took x-rays of his eye and eye socket and stitched his inner lip. He needed four stitches.

After the doctors in the emergency room x-rayed Carpenter's eye and stitched his lip, he was placed in an ambulance and taken to Methodist Hospital in Indianapolis for emergency reconstructive surgery. *Id.* at 76. Carpenter remained in the hospital for two days. At the time of trial, nearly a year later, Carpenter still did not have full use of his left eye.

While waiting for Carpenter, several people from the bar contacted York. Perkins sent her a text message at 1:35 a.m. telling her that he was sorry and informing her that Johnson was barred from the bar for life. *Id.* at 107; Ex. 13. She also heard from Lovell, who inquired about Carpenter's condition and apologized that the fight had occurred. *Id.* at 108.

The State charged Johnson with Class C felony battery resulting in serious bodily injury.[4] Appellant's App. p. 1. A jury trial was held. At trial, Johnson testified in his own

---

[3] Carpenter testified that he did not remember what happened after the fight and that he was dragged to the parking lot. Tr. p. 69.

[4] We direct counsel to Indiana Appellate Rule 50(B), which states that the Appellant's Appendix shall contain "(a) the Clerk's Record . . . ." Ind. Appellate Rule 50(B). The Clerk's Record "shall consist of the Chronological Case Summary (CCS) and all papers, pleadings, documents, orders, judgments, and

defense. Johnson claimed that he did not see Carpenter, much less kick or punch him. Tr. p. 272, 279. Instead, Johnson stated that as he was coming out of the bathroom, someone ran into him and caused him to fall on his back. Johnson claimed that he could not get up until Lovell came and started pulling people off of the pile. He also claimed that he never wears boots. On cross-examination, Johnson admitted to having four pairs of boots in his closet.

During closing arguments, the State made several statements in order to persuade the jury that Johnson was guilty. First, in explaining the meaning of beyond a reasonable doubt, the State used the simile of a pig in manure. The State said:

> The court says that means firmly convinced, not beyond all doubt, but that you're firmly convinced that's what happened. You may remember I told you in jury selection about growing up, raising pigs and pig farm, cleaning out pig pen, had a pig the next day went in and there was manure in again. You guys remember that dumb story I told? We said, it looked like pig manure. Smelled like pig manure and if you stepped in it, felt like pig manure so I think you'd be firmly convinced or beyond a reasonable doubt that that was pig manure and that pig did it. Well, I think that's real applicable to this case. I would submit to you that Jerry Johnson's like that pig in the pen. He can try all he wants to blame this on somebody else or something else or another circumstance, but when all that's said and done, it's just a pile of manure. Same thing.

*Id.* at 339.

Second, throughout the closing argument, the State commented on the credibility of witnesses. The State suggested that the testimony of Lovell and his fiancee, Ashley Gard, might be called into question because they are good friends with Johnson. *Id.* at 316. The State also commented on the likelihood that Johnson was wearing boots. During closing

---

other materials filed in the trial court . . . ." Ind. Appellate Rule 2(D). Instead of relying upon the charging information, we must rely on the chronological case summary submitted by Johnson.

4

argument, the prosecutor said, "Jerry Johnson tells us he never wears boots. When did you last here [sic] of a construction worker, or a Harley rider that has a whole closet full of boots, but I never wear them." *Id.* at 338.

Third, the State bolstered testimony of a key witness by stating that Perkins "will probably get fired when he goes back today . . . ." suggesting that Perkins is more likely to be testifying truthfully. *Id.* at 335.

The jury found Johnson guilty of Class C felony battery resulting in serious bodily injury. *Id.* at 342. The court sentenced Johnson to five-and-a-half years executed in the Department of Correction. *Id.* at 395.

Johnson now appeals.

### Discussion and Decision

Johnson makes two arguments on appeal. First, he claims that the State made repeated and improper comments during his closing argument that deprived Johnson of his constitutional right to a fair trial. Second, he asserts that he received ineffective assistance of counsel because his trial counsel failed to object to various comments made by the prosecutor during closing arguments and because his trial counsel failed to object to the admission of a photograph of a text message from a cell phone, which was hearsay within hearsay.

### I. Prosecutorial Misconduct

Johnson first argues that the prosecutor committed prosecutorial misconduct by making inappropriate statements during his closing argument. Specifically, Johnson argues that the prosecutor improperly characterized Johnson as a pig and his testimony as

5

pig manure; inappropriately commented on the credibility of witnesses, including his own testimony; and improperly bolstered the credibility of a key witness.

However, trial counsel did not object to any of the alleged instances of misconduct when they occurred except for the prosecutor's comment regarding Perkins's credibility. Generally, in order to preserve a claim of prosecutorial misconduct for appeal, a defendant must object at trial. *Washington v. State*, 902 N.E.2d 280, 289-90 (Ind. Ct. App. 2009), *trans. denied.* Where a defendant fails to make an objection to the allegedly improper comments, he fails to preserve any claim of prosecutorial misconduct for appellate review. *Id.* at 290. Once he objects, the defendant must then ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if the admonishment is inadequate. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id.* Fundamental error is a narrow exception intended to place a heavy burden on the defendant. *Id.* It requires the defendant to establish that the misconduct "[made] a fair trial impossible or constitute[d] clearly blatant violations of basic and elementary principles of due process" or that the misconduct "present[ed] an undeniable and substantial potential for harm." *Id.* (quotation omitted).

Waiver notwithstanding, we evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis. We first determine whether misconduct occurred; then, if there was misconduct, we assess whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. *Id.*

## A. *Prosecutor's Analogies to Pigs and Manure*

Johnson argues that the prosecutor committed misconduct by referring to him as a pig and his testimony as pig manure. Johnson, however, did not object or ask the trial court to admonish the jury or move for a mistrial when the statement was made. *See* Tr. p. 339. Thus, Johnson may only establish prosecutorial misconduct by showing fundamental error. We believe that no error, much less fundamental error, occurred. In his brief, Johnson mischaracterizes the prosecutor's statements. When discussing reasonable doubt, the prosecutor stated:

> The court says that means firmly convinced, not beyond all doubt, but that you're firmly convinced that's what happened. You may remember I told you in jury selection about growing up, raising pigs and pig farm, cleaning out pig pen, had a pig the next day went in and there was manure in again. You guys remember that dumb story I told? We said, it looked like pig manure. Smelled like pig manure and if you stepped in it, felt like pig manure so I think you'd be firmly convinced or beyond a reasonable doubt that that was pig manure and that pig did it. Well, I think that's real applicable to this case. I would submit to you that Jerry Johnson's like that pig in the pen. He can try all he wants to blame this on somebody else or something else or another circumstance, but when all that's said and done, it's just a pile of manure. Same thing.

*Id.* at 339.

By examining the statement in context, it is apparent that the prosecutor was not calling Johnson a pig or referring to his testimony as pig manure. Instead, he was telling a story to help the jury understand that relying upon circumstantial evidence is permissible in finding Johnson guilty. The purpose of the prosecutor's statement was to show the jury that even though no one actually saw the pig defecate, the jury could still conclude that the manure is from the pig because the pig was the only pig in the pig pen after the farmer cleaned it the previous day. The use of analogies to help jurors understand concepts during

7

closing argument is not only appropriate, it is taught in many trial-advocacy courses. *See* Steven Lubet, *Modern Trial Advocacy Analysis & Practice* 426 (2013). There was no error here.

### B. *Prosecutor's Comments on the Credibility of Witnesses*

Second, Johnson contends that the prosecutor committed misconduct by improperly commenting on the credibility of other witnesses and on the credibility of Johnson's testimony. Johnson did not object and did not ask the trial court to admonish the jury or move for a mistrial for any of the allegedly inappropriate comments made by the prosecutor. *See* Tr. p. 316, 335, 338. Therefore, Johnson may only establish prosecutorial misconduct by showing fundamental error.

We do not find that the prosecutor committed misconduct in any of the statements that commented on the witnesses' credibility. Indeed, "a prosecutor may comment on the credibility of witnesses as long as the assertions are based on reasons which arise from the evidence." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006) (quoting *Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind. 1988)).

First, Johnson finds objectionable the prosecutor's statement regarding the credibility of Ashley Gard and Jeremy Lovell. In closing argument the prosecutor said, "I'm not sure whether you can believe everything they said. Why not? Well, they appear to be really good friends with Jerry." Tr. p. 316. This comment was based upon the evidence presented at trial, as the night of the incident, Johnson's date testified that she sat at the table with Lovell and his fiancee for about an hour. Moreover, Lovell testified that Johnson had fixed equipment in his bar for free. There was also evidence that Lovell and

8

Johnson rode Harley-Davidson motorcycles together. The evidence presented shows that Johnson and Lovell were friends and that Lovell may not have wanted to testify against Johnson.

Second, the prosecutor questioned Johnson's credibility by stating that "Jerry Johnson tells us he never wears boots. When did you last here [sic] of a construction worker, or a Harley rider that has a whole closet full of boots, but I never wear them." *Id.* at 338. Johnson first contends that this statement "sought to paint the defendant as a liar using negative stereotypes of a biker . . . ." Appellant's Br. p. 10. However, we do not read this statement as emphasizing that Johnson was a biker. Instead, the prosecutor was stating that it did not make sense for Johnson to have several pairs of boots in his closet, but never wear them. Moreover, Carpenter testified to being kicked with boots and police removed four pairs of boots from Johnson's closet. However, Johnson testified that he never wears boots despite owning four pairs and doing physical labor for a living. Because the prosecutor's argument arose purely from evidence and the reasonable inferences therefrom, there was nothing improper about that argument.

### C. Bolstering of State's Witness

Third, Johnson argues that the prosecutor improperly vouched for the testimony of Perkins, the bartender, by stating that Perkins, "will probably get fired when he goes back today . . . ." Tr. p. 335. While defense counsel did object to that statement, the prosecutor continued to speak and defense counsel did not request for the jury to be admonished or move for a mistrial. *See id.* Thus, Johnson may only establish prosecutorial misconduct by showing fundamental error. No error, much less fundamental error, occurred here.

9

While it is true that a prosecutor may not vouch for the credibility of a witness, he may comment on the witness's credibility so long as the assertions are based upon reasons arising from the evidence. *Gaby v. State*, 949 N.E.2d 870, 881 (Ind. Ct. App. 2011); *Neville v. State*, 976 N.E.2d 1252, 1260 (Ind. Ct. App. 2012) (prosecutor's statement that a certain witness told the truth was not impermissible because it was based upon evidence presented at trial), *trans. denied*.

Here, the prosecutor merely stated that Perkins would probably be fired. This statement was supported by testimony Perkins gave. When Perkins testified, he stated that he was worried about his job. Moreover, the bar's owner, Lovell, was Johnson's friend. It would not be unreasonable to conclude that Perkins might be more credible by giving his testimony with the knowledge that he could be receiving pressure from his boss not to testify or to testify differently. In suggesting that Perkins was truthful, the prosecutor was merely commenting on Perkins's credibility, which he was permitted to do.

### D. Cumulative Effect of Prosecutor's Comments

Fourth, Johnson argues that the cumulative effect of the prosecutor's comments made a fair trial impossible. This Court has concluded that "[a]lthough each instance of prosecutorial misconduct alone may not have constituted reversible error," the cumulative effect of the State's misconduct may make a fair trial impossible. *Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009).

However, in order for the cumulative effect of prosecutorial misconduct to make a fair trial impossible, there must be prosecutorial misconduct. Here, we have determined that no prosecutorial misconduct occurred. The prosecutor's statements about the farm and

10

the pig was an appropriate way to explain the concept of reasonable doubt to the jurors. Similarly, the comments made by the prosecutor regarding the credibility of Johnson and other witnesses was supported by evidence admitted at trial. For these reasons, there was no error, much less fundamental error.

## II. Ineffective Assistance of Counsel

Second, Johnson asserts that he received ineffective assistance of counsel because his trial counsel failed to object to prosecutorial comments about the credibility of Johnson and other witnesses and failed to object to the admission of a text message.

To prevail on a claim for ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy either prong will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions with deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).

11

To prove ineffective assistance of counsel due to failure to object, a defendant must prove that the objection would have been sustained if made and that he was prejudiced by the failure to object. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010).

*A. Failure to Object to Prosecutor's Statements*

First, Johnson argues that his trial counsel was ineffective because he failed to object to the prosecutor's statements concerning the credibility of Gard, Lovell, and Johnson. Johnson has not shown that an objection to the prosecutor's comments would have been sustained if made. There was testimony introduced that Gard and Lovell were friends with Johnson, that Johnson did wear boots, and that Perkins was concerned about his job. The prosecutor's statements were fair characterizations based upon the evidence submitted. For this reason, the objection would have failed.

Even if the prosecutor's statements had been objectionable, counsel may have had a strategic reason for not objecting. *See Charlton v. State*, 702 N.E.2d 1045, 1051-52 (Ind. 1998) (holding that counsel was not ineffective for failing to object to prosecutor's closing argument because counsel could have made a strategic decision not to object). Trial counsel's failure to object to the prosecutor's statements do not amount to ineffective assistance of counsel.

*B. Failure to Object to the Text Message*

Second, Johnson argues that his trial counsel was ineffective because he failed to object to the introduction of a photograph of the text message from Perkins to York. The admitted text message stated, "so sorry Shawn, I hope Carpenter is ok . . . . Jerry is barred 4 life just to let you know and u guys are welcome back anytime babe . . .

12

I'm sorry . . ." Ex. 13. The text message was used both as evidence of the defendant's guilt and to establish the timing of the bar fight.

The photograph of the text message represents hearsay within hearsay. Hearsay is "a statement that is not made by the declarant while testifying at the trial or hearing; and is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible unless these rules or other law provides otherwise." Ind. Evidence Rule 802; *Archer v. State*, 996 N.E.2d 341, 350 (Ind. Ct. App. 2013).

The State cannot demonstrate that any hearsay exception or exclusion applies to the photograph of the text message. *See* Evid. R. 801(d), 803. For this reason, had trial counsel objected, the objection would likely have been sustained.

However, Johnson must also prove that he was prejudiced by his trial counsel's failure to object. In other words, Johnson must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Timberlake*, 753 N.E.2d at 603. Here, even if trial counsel had objected and the photograph of the text message had been excluded from evidence, Johnson likely still would have been found guilty. Several witnesses testified that they saw Johnson's arms going up and down even though they could not see who was being punched. Both Carpenter and York testified that they heard Johnson yell at Carpenter before hitting him. Carpenter also testified to having a shattered eye and a busted lip. Because the result would likely have been the same even if the text message had not been admitted into evidence, Johnson was not prejudiced by his trial counsel's failure to object.

13

Affirmed.

RILEY, J., and MAY, J., concur.