Eugene E. WELLS, Jr.,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 79A02–8907–CR–346 [1].

Court of Appeals of Indiana,
First District.

March 18, 1991.

**1.** This case was reassigned to this office on January 2, 1991.

Eugene C. Hollander, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

Defendant-appellant, Eugene E. Wells, Jr. (Wells), appeals the denial of his motion to correct error following his convictions and 70-year sentence for armed robbery, a Class B felony,[2] confinement, a Class B felony,[3] intimidation, a Class C felony,[4] attempted rape, a Class A felony,[5] and sexual battery, a Class C felony.[6]  On appeal, he asks this court to determine whether:

I.  The trial court properly excluded one of his witness's testimony.

II.  The photo identification procedure used was proper.

III.  The trial court properly instructed the jury.

IV.  He received a manifestly unreasonable sentence.

We affirm in part and reverse in part.

## FACTS

At 11:00 p.m. on July 6, 1988, the victim in this case, a staff resident for a Purdue

---

2.  IND. CODE 35–42–5–1.

3.  IND. CODE 35–42–3–3.

4.  IND. CODE 35–45–2–1.

5.  IND. CODE 35–41–5–1; IND. CODE 35–42–4–1.

6.  IND. CODE 35–42–4–8.

University dormitory, was in her room. A man whom the victim later identified as Wells, knocked on her door and asked if she could help him locate someone he claimed lived in the same dormitory. While the victim made phone calls in an effort to locate the person, Wells entered the victim's room and pointed a gun at her. He took some money from the victim's purse, handed her some handcuffs, and told her to put them on. The victim fumbled with the handcuffs and pretended not to know how to operate them. Wells then ordered her to remove the robe she was wearing. When she failed to comply, Wells undid her robe and pushed it off her shoulders. He then grabbed the victim by the throat and pushed her onto the bed. After laying the gun down, Wells started to unfasten his pants. At this point, the victim grabbed for the gun and struggled with Wells. Wells was able to regain control of the gun and then fled the scene.

Later that evening, the victim went to the police station where she was shown a photographic lineup. The victim viewed seven photographs and selected Wells's picture as that of her attacker. She stated, however, that she was not absolutely certain of her selection. Two days later, the victim returned to the police station where she was shown a second photographic lineup that contained 15 photos. The pictures of Wells in the second lineup were more recent than the ones in the first lineup. Again, the victim identified Wells as her attacker, but stated there was something different about his appearance in the picture. She was then shown two additional photographs of Wells that were taken from a different angle. The victim pointed to one of the photographs of Wells and stated she was absolutely certain that the person depicted was her attacker.

An initial hearing was held on July 14, 1988, at which the trial court set the omnibus hearing date for September 12, 1988. On January 9, 1989, Wells filed a notice of his intent to offer an alibi defense. Having determined that Wells's alibi notice was not timely filed, the trial court granted the State's motion to exclude the testimony of the alibi witnesses. On Wells's motion to reconsider, the trial court allowed the testimony of three alibi witnesses whom the State had an opportunity to depose.

A jury convicted Wells of the five felonies listed above and acquitted him of attempted criminal deviate conduct. The trial court subsequently sentenced Wells to consecutive terms of 20 years for armed robbery, 20 years for confinement, and 30 years for attempted rape, for a total executed sentence of 70 years. The intimidation and sexual battery convictions were merged with the attempted rape conviction. Wells appeals.

## DISCUSSION AND DECISION

### I.

Wells first argues the trial court erred in excluding the testimony of D'Angelo Goings, one of his alibi witnesses. IND.CODE 35-36-4-1 requires an alibi notice be filed no later than 20 days prior to the omnibus date. Wells's filing of his notice nearly four months following the omnibus date was untimely. He nonetheless argues that Goings's testimony should have been allowed because the tardiness of the notice was solely his attorney's fault, he maintained he had an alibi from the time he was arrested, and the State was not prejudiced by the untimely filing. To support his position, Wells cites *Baxter v. State* (1988), Ind., 522 N.E.2d 362. He points to language in *Baxter* that deals with the effect of the alibi statute on an accused's right to testify. Since the excluded alibi testimony in the present case was not from the accused, the language Wells cites does not apply to this case.

Wells's argument fails on other grounds as well. IND.CODE 35-36-4-3 provides that an untimely filing of an alibi notice shall result in exclusion of the alibi evidence unless the defendant can show good cause for his failure to comply with the filing limitations. *James v. State* (1980), 274 Ind. 304, 411 N.E.2d 618; *Denney v. State* (1988), Ind.App., 524 N.E.2d 1301, *trans. denied*. Accordingly, the trial court would have been justified in excluding all of the alibi evidence Wells presented.

*James, supra.* The trial court, however, allowed Wells to present three of his alibi witnesses despite his failure to comply with the statutory notice requirements. As with the defendant in *James, supra,* the trial court's actions conferred a consideration on Wells not contemplated by the statute, and we will not find error in the trial court's exclusion of an additional witness's testimony.

## II.

■ Wells next contends the photographic lineup used to assist the victim in identifying him was unduly suggestive. Wells neither filed a pretrial motion to suppress nor did he object at trial to the victim's testimony relating to her identification of Wells. To avoid waiver of the issue on appeal, Wells invites us to review the issue under the fundamental error doctrine. A similar invitation was declined by our supreme court in *Outlaw v. State* (1985), Ind., 484 N.E.2d 10. Despite Wells's waiver of the issue, we can find no basis for reversal.

■ Contrary to Wells's assertion, the fact that the two arrays both contained pictures of him does not constitute undue suggestiveness. *Stewart v. State* (1985), Ind., 474 N.E.2d 1010. This is particularly true since photographs of three people other than Wells were also included in both arrays. Similarly, the fact that the detective handed the victim two additional photographs of Wells does not taint the identification. The victim independently selected Wells's photograph and, according to her testimony, was 80 to 90 percent certain he was her attacker. The victim told the detective that her hesitation was because the angle in the photograph was different than the angle at which she observed Wells in her room. In response to her hesitation, the detective without comment gave the victim two additional photographs of Wells at different angles than in the array. Apparently, one of these angles matched the victim's observation of Wells during the attack and removed her hesitation connected with the other photographs. In a similar situation, our supreme court found no

taint in the pretrial photographic identification. *Madden v. State* (1990), Ind., 549 N.E.2d 1030. The court stated in *Madden* that "because the victim already had picked appellant's photograph from the array, we see no harm to appellant in the victim's confirmation of her identification by asking to see another photograph of appellant." *Id.* at 1032.

■ As a final matter, we note there was an independent basis apart from the photo array to support the victim's in-court identification of Wells. She had an opportunity to observe Wells for five to ten minutes in her lighted dormitory room and was as close as an arm's reach from his face. Although Wells was wearing sunglasses during the incident, the victim stated she was able to see through them because they were only lightly tinted and she was very close to his face. She was able to describe distinctive characteristics such as his light skin, his thin lips, and his long eyelashes. When such a factual basis for the in-court identification exists independent of the pretrial identification, the in-court identification will be allowed. *Rondon v. State* (1989), Ind., 534 N.E.2d 719, *cert. denied,* — U.S. —, 110 S.Ct. 418, 107 L.Ed.2d 383. In fact, an adequate independent basis for an attempted rape victim's identification of her attacker has been found to exist when the victim spoke face to face with him, was two feet away from him, and was at close quarters with him during the attack. *Dukes v. State* (1986), Ind., 501 N.E.2d 420. We find no error in the admission of the victim's in-court identification testimony.

## III.

■ Wells next claims error in the following jury instruction:

In proving that the defendant committed a substantial step toward the commission of the crime of Rape, and Criminal Deviate Conduct, it is sufficient that the State prove any one of the acts alleged as a substantial step if in light of all of the evidence, the proof convinces the jury beyond a reasonable doubt that the act is

a substantial step towards the commission of the crime of rape. *Record* at 143. Wells argues that the instruction incorrectly stated the law because it gave the jury the impression that it could convict for both attempt crimes even if the State only proved one substantial step. Assuming for the sake of argument that Wells is correct in his assertion, any error is harmless because he was acquitted of the attempted criminal deviate conduct charge. *See Parrish v. State* (1984), Ind. App., 459 N.E.2d 391, *trans. denied* (any error in failing to instruct the jury on a parent's right to confine a dependent was harmless due to directed verdict on confinement charge).

■ Wells also claims that the instruction was not supported by the evidence. His claim is essentially that there was insufficient evidence to support his attempted rape conviction. The record, however, reveals that Wells ordered the victim at gunpoint to remove her clothing, that he began to remove the victim's robe himself, that he grabbed the victim by the throat, threw her on the bed, and started to unfasten his pants. This is sufficient evidence to warrant giving the instruction and to support Wells's attempted rape conviction.

■ Wells finally argues the instructions did not adequately inform the jury that to convict him of an attempted crime, they must find that he acted with the specific intent required for commission of the principal crime. While Wells did not object to all of the instructions relating to attempt, he did object to the instruction set forth above and we find this sufficient to preserve his claim on appeal.

■ When reviewing instructions, this court must consider them as a whole. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1102, *cert. denied*, 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86. Instruction No. 9 set forth the elements of rape, including the specific intent of "knowingly or intentionally." Instruction No. 10 provided that "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, ..." *Record* at 135. The jury was also instructed to consider all of the instructions together and was provided definitions of both knowingly and intentionally. Under these same circumstances, our supreme court upheld an attempted rape instruction in *Seeley v. State* (1989), Ind., 547 N.E.2d 1089. Wells, like the defendant in *Seeley*, relies on *Smith v. State* (1984), Ind., 459 N.E.2d 355. Like the court in *Seeley*, we find the instructions here were more complete than in *Smith* so that they adequately informed the jury of the requisite intent of attempted rape. We find no error.

## IV.

■ Wells finally asserts error in sentencing. We remind him that sentencing decisions rest within the sound discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34. A statutorily authorized sentence will not be revised on appeal unless the sentence is manifestly unreasonable in light of the offense and the offender. *Berry v. State* (1990), Ind. App., 561 N.E.2d 832; Ind.Appellate Rule 17(B). The trial court, upon consideration of relevant facts, has the authority to increase presumptive penalties, impose consecutive sentences, or both. *Parrish v. State* (1987), Ind., 515 N.E.2d 516; IND. CODE 35–38–1–7 (repealed, now 35–38–1–7.1).

■ At the sentencing hearing, the court noted several aggravating factors, including: 1) dealing in drugs; 2) existence of a juvenile record; 3) prior felony conviction as an adult; 4) violation of probation; 5) violent disposition as evidenced by his exercise of hostility toward the probation officer in connection with the presentence investigation for the present offenses; 6) the fact that he struck a teacher three times while at the Boys' School; and, 7) the likelihood that he will commit another crime. The court also noted as a mitigating factor that Wells received no discipline as a child. The trial court, however, did not articulate on the record whether the aggravating factors outweighed the mitigating factors. In our opinion, this failure does not necessitate a remand because the

record reveals the trial court thoughtfully evaluated the circumstances, and the aggravating factors it found are supported by sufficient evidence. *See Henderson v. State* (1986), Ind., 489 N.E.2d 68 (no remand necessary when judge's statement indicated he engaged in evaluation and balancing process but did not articulate his considerations on the record, and record indicated sentence was not manifestly unreasonable). Further, the factors listed by the court are sufficient to justify the imposition of enhanced and consecutive sentences. IND.CODE 35–38–1–7. We find no error in the enhancement or consecutive nature of the sentences.

■ Nevertheless, the trial court violated the prohibition against double jeopardy when it entered a judgment of conviction and sentence on the confinement charge and also convicted and sentenced Wells on both the armed robbery and attempted rape charges. This court recently addressed a similar situation in *Ryle v. State* (1990), Ind.App., 549 N.E.2d 81, *trans. denied.* In *Ryle*, Judge Shields explained that the element of force necessary to establish a robbery constitutes the crime of confinement because the force involves a substantial interference with a person's liberty, the same being the definition of "confine" in IND.CODE 35–42–3–1. A distinct confinement offense is committed when the force employed goes beyond that necessary to effectuate the robbery. The same is true for a rape offense. That is, "any confinement of the victim other than that necessary to effectuate the rape constitutes a separate violation of IC 35–42–3–3(a)(1) and a distinct, punishable offense." *Id.* at 85, n. 7.

The robbery Information in the present case alleged that "Wells did knowingly and intentionally take property, to wit: U.S. currency from the person and presence of [the victim], by using and threatening the use of force and by putting [the victim] in fear, all while armed with a deadly weapon, to wit: a gun; ..." *Record* at 7. The attempted rape Information alleged that Wells took a substantial step toward the commission of the crime of rape in that he:

knowingly and intentionally entered the residence of [the victim], pointed a gun at her, ordered her to put on a pair of handcuffs, partially removed her robe from her person and forced her down on her bed, with the intent to compel the [victim] by force and the imminent threat of force to have sexual intercourse with him, all while using and threatening the use of deadly force and while armed with a deadly weapon, to wit: a gun; ...

*Record* at 10. The confinement Information claimed that "Wells did knowingly and intentionally confine another person, to wit: [the victim] without the consent of the [victim], all while armed with a deadly weapon, to wit: a gun; ..." *Record* at 8. The confinement Information does not particularize the degree of force Wells used. At trial, the State presented no evidence that Wells used any force other than that necessary to effectuate the robbery or the attempted rape. As in *Ryle*, there was no extraneous interference with the victim's liberty. Accordingly, Wells did not commit a distinct offense of confinement and his conviction and sentence on that charge cannot stand.

This result is in line with our supreme court's decisions on this issue. In *Wethington v. State* (1990), Ind., 560 N.E.2d 496, the court reversed a confinement conviction and sentence because the charging Informations revealed that the confinement was the same as the "by force" element of the robbery. The court noted that:

[t]he holding of this case is limited to instances such as this one where criminal confinement is charged along with another crime, the commission of which inherently involves a restraint on the victim's liberty, and where the language of the charging instruments makes no distinction between the factual basis for the confinement charge and the facts necessary to the proof of an element of the other crime.

*Id.* at 508. We are faced with this precise situation here. Wells was charged with confinement along with robbery and attempted rape, both of which inherently involve a restraint on the victim's liberty. *Ryle, supra.* Further, the language of the confinement Information makes no distinction between the factual basis for the con-

finement and the factual basis of the force element contained in both the robbery and attempted rape Informations. Consistent with the holding in *Wethington*, Wells's confinement conviction and sentence must be reversed.[7]

As a final matter, we note that this case is distinguishable from cases in which a confinement conviction was upheld on double jeopardy grounds when the defendant was also convicted of rape and robbery. For example, in *Purter v. State* (1987), Ind., 515 N.E.2d 858, a confinement conviction was upheld because the confinement occurred both prior to and following a rape. The defendant in *Purter* held a knife to the victim's throat and forced her to go to another room prior to the rape. He then refused to leave the premises in an effort to prevent her from phoning the police after the rape. These acts of force were found to be separate from the rape and robbery because they were not committed in furtherance of those crimes. Here, however, Wells pointed a gun at the victim to obtain money from her and in an attempt to force her to have sexual intercourse. Contrary to the defendant's actions in *Purter*, Wells did nothing prior to or following the robbery and attempted rape that constituted a separate confinement.[8]

Wells's conviction and sentence on Count II, confinement, are reversed. Wells's convictions and sentences on the remaining charges are affirmed.

RATLIFF, C.J., and BUCHANAN, J., concur.

---

**7.** We note that in *Wethington*, the supreme court upheld the defendant's intimidation conviction because the charging instrument alleged different facts than the facts constituting the "by force" element in the robbery Information. In the present case, however, the trial court properly merged Wells's intimidation conviction with the attempted rape conviction because the intimidation Information did not allege facts different than those constituting the force element of the attempted rape.

**8.** The supreme court stated that its decision in *Wethington* did not affect its decision in *Purter*. 560 N.E.2d at 508. As stated by the court, the holding in *Wethington* is limited to the specificity of a charging instrument for confinement when crimes which inherently involve a restraint on the victim's liberty are also charged. This holding would not apply to cases such as *Purter* in which the adequacy of the charging instrument is not in issue.

**1.** This case was reassigned to this office on January 2, 1991.