Kenneth Scott **HURT**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 49S00–9408–CR–746.

Supreme Court of Indiana.

Nov. 16, 1995.

---

up Tibbs Avenue and offered her a ride. She accepted. Appellant drove behind Eagledale Bowling Alley and abandoned the car when it became stuck in some mud. He demanded that Redd give him money, which she did, then he forced her to walk down the path behind the bowling alley to a vacant field. He ordered Redd to take off her clothes, and he raped her. He then shot Redd twice in the back, and walked home, leaving her in the vacant field.

When Hurt returned home, he told ·his girlfriend he had killed someone. She noticed Hurt's pants were bloody and his boots were covered in mud. Hurt also carried a pistol and had in his possession more than the fifty dollars he had the previous evening. Appellant and a friend eventually pulled the car from the mud behind the Eagledale Bowling Alley. Hurt then fled the state in a stolen truck.

On April 10, 1991, Redd's body was found in the field in the 2100 block of North Livingston, commonly known as the "Mayor's Gardens." An autopsy revealed she died of two "hard contact" gunshot wounds to the back, meaning that the muzzle of the gun was in contact with the skin when the gun was fired. Spermatozoa and seminal fluid were discovered in the victim's vagina.

On April 29, 1991, Hurt turned himself in to the Rochester, Minnesota police because he knew the police in Indianapolis were searching for him. He waived extradition and returned to Indiana. The State charged Hurt with murder, a felony, Ind.Code Ann. § 35–42–1–1 (West Supp.1995) (Count I); murder while committing robbery, a felony, *id.* (Count II); robbery resulting in serious bodily injury, a class A felony, Ind.Code Ann. § 35–42–5–1 (West 1986) (Count III); rape resulting in serious bodily injury, a class A felony, Ind.Code Ann. § 35–42–4–1 (West Supp.1995) (Count IV); and confinement resulting in serious bodily injury, a Class B felony, Ind.Code Ann. § 35–42–3–3 (West Supp.1995) (Count V).

The jury found Hurt guilty as charged. The trial court sentenced Hurt to sixty years

Robert C. Perry, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana and Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Kenneth Scott Hurt appeals sentences totaling ninety years for murder and rape. We affirm.

Hurt resided with his girlfriend. On March 30, 1991, he left to get her something to eat, but met a friend of his instead, and the two went out for the evening. Hurt later telephoned his girlfriend and informed her that he and his friend planned to go out drinking.

Hurt left his friend's house at about 3:45 a.m. and drove toward home. According to Hurt, he saw the victim, Lula Redd, walking

for murder;[1] eight years for robbery; thirty years for rape; and three years for confinement, with the sentences for these last three to run concurrently to each other. The trial court ordered the three concurrent sentences served consecutive to the murder sentence. The aggregate sentence is thus ninety years.

Appellant argues that the imposition of the maximum sentence of sixty years for murder and a consecutive sentence of thirty years for rape was manifestly unreasonable given the mitigating factors involved in the case. Article VII, Section 4 of the Indiana Constitution gives this Court the power "to review and revise sentence[s]"[2] Under Indiana Appellate Rule 17(B) this Court has restrained its review of sentences challenged on appeal. *Brewer v. State* (1995), Ind., 646 N.E.2d 1382, 1386.[3] This Court "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.App.R. 17(B)(1). "A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." Ind.App.R. 17(B)(2).

We proceed to review sentences under this rule with the knowledge that "reasonable minds may differ on what sentence is appropriate in any given case." *Fointno v. State*

(1986), 487 N.E.2d 140, 149. "Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge." *Id.*

In assessing the appropriate sentence, the trial court found the following aggravating factors:

(1) Appellant had sufficient brushes with the criminal justice system that it would appear he was at risk to commit another crime.

(2) The nature and circumstances of the crime were heinous. The wounds were contact wounds, the victim's body was left and abandoned in an overgrown, vacant field, and no attempt was made to find help for the victim.

(3) He had a prior criminal record.

(4) His character was questionable.

(5) The selection of the victim was random and not motivated by a fight or squabble.

(6) Appellant destroyed evidence when he "chewed up" the gun and spread it over Georgetown Road.

(7) Appellant was on probation when he committed the crime.

As mitigating factors the trial court found:

(1) At a younger age, Hurt was struck in the head and suffered from learning disabilities.

---

**1.** The court concluded that the felony murder conviction merged with the murder conviction.

**2.** In explaining the nature of the power contemplated by this section, the Indiana Judicial Study Commission stated: " '[T]he proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England.' " *Cooper v. State* (1989), Ind., 540 N.E.2d 1216, 1218, quoting Report of the Judicial Study Commission 140 (1967). The Court of Criminal Appeals' power to review and revise sentences was defined as follows:

> On appeal against sentence the Court of Criminal Appeal shall, if they think that a different sentence should have been passed, quash the sentences passed at the trial, and pass such other sentence warranted in law by the verdict (whether more or less severe) in substitution therefor as they think ought to have been passed, and in any other case shall dismiss the appeal.

*Id.* (quoting Criminal Appeal Act, 1907, 7 Edward 7, ch. 23, § 4(3)).

**3.** Other approaches are possible. The American Bar Association suggests the following goals for appellate sentencing review:

> (a) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
> (b) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process;
> (c) to facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders; and
> (d) to promote the development and application of criteria for sentencing which are both rational and just.

IV American Bar Association, *Standards for Criminal Justice* § 20–1.2 (2d ed. 1980). The standards suggest that appellate courts use review "to make effective the goals of sentencing review." *Id.* § 20–3.1(b).

(2) There had been excessive use of alcohol in the appellant's home when he was growing up, and he himself was a heavy user.

(3) Hurt was turned out of his home at the age of sixteen (though the court thought this might have also been an aggravating circumstance in that the defendant should have learned from it and apparently did not).

(4) Hurt turned himself in and gave a highly incriminating statement to the police, though the statement was not especially candid.

Hurt contends the trial court gave inadequate consideration to the mitigating circumstances that he voluntarily contacted authorities in Minnesota, waived extradition to Indiana, and gave a statement implicating himself in the crimes.

 The trial judge is responsible for determining the appropriate weight of aggravating and mitigating factors in sentencing. *Wingett v. State* (1994), 640 N.E.2d 372, 373. "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *Id.*

In the instant case, the record reveals that the court did consider the mitigating circumstances. Although Hurt received a ninety-year sentence, it was less than the maximum. He faced an additional eight years for robbery and an additional three years for confinement. The trial court appropriately considered appellant's surrender and implicating statement by ordering the robbery and confinement sentences be served concurrently with his sentence for rape.

In light of the trial court's findings on aggravating and mitigating circumstances, appellant's sentence is not unreasonable considering the nature of the offense, the character of the offender, and the aggravating factors. The trial judge adequately set forth the aggravating and mitigating circumstances and determined that the aggravating circumstances outweighed the mitigating circumstances. The trial judge was in the best position to determine these factors and to afford them the proper weight. We will not override his judgment.

We affirm the trial court.

DeBRULER, DICKSON, SULLIVAN and SELBY, JJ., concur.