**Mario McCANN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0002–CR–43.**

Court of Appeals of Indiana.

Jan. 26, 2001.

Transfer Granted April 12, 2001.

---

Amy L. Dell, Dell & Dell, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Mario McCann ("McCann") was charged and convicted of Attempted Murder,[1] Burglary,[2] and Attempted Rape.[3] McCann was tried by jury and sentenced to a total executed sentence of one hundred years. McCann appeals his convictions and sentence. We affirm in part, and reverse and remand in part.

### Issues

McCann raises four issues on appeal, which we restate as follows:

I. Whether the photo array shown to the identifying witnesses was unduly suggestive and whether their subsequent in-court identifications were improper;

II. Whether the State committed prosecutorial misconduct in its closing argument;

III. Whether the trial court properly instructed the jury on Attempted Rape; and,

IV. Whether McCann's sentence was manifestly unreasonable.

### Facts and Procedural History

The facts most favorable to the judgment are as follows. On the evening of August 2, 1997, McCann approached and talked to A.L. ("A.L.") and Anthony Dozier ("Dozier") at their home at 38th Street and College Avenue in Indianapolis. After McCann left, A.L. went upstairs and fell asleep in her bed with the television on. When A.L. awoke McCann was in her bedroom. McCann tried to pull her covers off and told her he had a gun that he would use if she was not quiet. Additionally, McCann touched A.L.'s breasts and stated "shut up, it [won't] take very long, and then [I'll] leave [you] alone." A.L. viewed McCann's face for approximately ten minutes. A.L.'s boyfriend, Dozier, then entered the bedroom, saw McCann, and began to struggle with McCann. During this struggle, McCann shot Dozier in the chest. McCann then left through the bedroom window. Dozier viewed McCann's face for approximately five minutes. An upstairs neighbor called the police.

Detective Lawrence Cahill ("Detective Cahill"), of the Indianapolis Police Department, responded to the police radio call, and conducted the investigation of the crime. A.L. described McCann as a young black male approximately five feet ten inches in height, and other residents of the apartment and neighbors indicated to Detective Cahill that the suspect's first name was Mario. From a police database, Detective Cahill printed out photographs comprised of black males named Mario. Then, after eliminating pictures from suspects that were in the database more than

---

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

2. Ind.Code § 35–43–2–1.

3. Ind.Code §§ 35–41–5–1, 35–42–4–1.

once and removing names, Detective Cahill presented a thirty-two-picture array to A.L. and Dozier. Two of the pictures within this array were of McCann. Both Dozier and A.L. identified McCann as the person who attempted to rape A.L. and shot Dozier. Thereafter, McCann was arrested and charged for Attempted Murder, Burglary, and Attempted Rape.

Prior to trial, McCann moved to suppress A.L.'s and Dozier's in-court identifications of him. McCann argued that the out of court identification procedures were unduly suggestive. The trial court denied this motion. During trial, McCann renewed his objections to A.L.'s and Dozier's in-court identifications. These objections were denied.

McCann was found guilty on all three charged offenses. The trial court cited four aggravating circumstances and no mitigating circumstances. The trial court sentenced McCann to fifty years for each offense, with the Attempted Murder conviction and Burglary conviction to run consecutively and the Attempted Rape conviction to run concurrently. McCann was sentenced to a total executed sentence of one hundred years.

### Discussion and Decision

#### I. Photo Array and In–Court Identification

##### A. Rule of Law

Due process of law under the Fourteenth Amendment to the United States Constitution requires suppression of testimony concerning a pretrial identification when the procedure employed is impermissibly suggestive. *Harris v. State*, 716 N.E.2d 406, 410 (Ind.1999). A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Id.* Factors to be considered in evaluating the likelihood of a misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness. *Id.* A photographic array is sufficient if the defendant "does not stand out so strikingly in his characteristics that he virtually is alone with respect to identifying features." *Id.* (quoting *Pierce v. State*, 267 Ind. 240, 246, 369 N.E.2d 617, 620 (1977)). Where the pretrial procedures are not impermissibly suggestive, both the evidence of the pretrial and in-court identifications are held to be properly admitted. *Id.*

##### B. Analysis

Here, prior to trial, A.L. described the perpetrator as a young black male approximately five feet ten inches in height with a short haircut. Dozier offered a similar description, adding that the perpetrator was dark complected. A.L. and Dozier also indicated that they had previously seen the perpetrator when he approached them on the front porch of their apartment. A.L. further testified that she viewed the perpetrator's face for approximately ten minutes on the night of the incident, and Dozier stated that he viewed the perpetrator's face for approximately five minutes while the two struggled. Thus, both witnesses had a good opportunity to view the perpetrator and reason to be attentive.

After Detective Cahill compiled thirty-two pictures of young black males with the first name of Mario, he showed this array of photos to both A.L. and Dozier on separate occasions and outside of each other's presence. While this photographic array included young black males with varying physical attributes, including different hair lengths and complexions, McCann did not "stand out so strikingly" so as to render the process impermissibly suggestive. *Pierce*, 369 N.E.2d at 620. Similarly, the inclusion of two pictures of McCann, apparently by mistake, was not unduly suggestive. *See Hollonquest v. State*, 272 Ind. 380, 398 N.E.2d 655 (1979) (holding that

where a witness was shown a thirty-picture array which contained two pictures of the defendant, and he selected both pictures, this did not suggest to a significant degree that the police consider the individual portrayed to be a prime suspect and that this was not impermissibly suggestive). A.L. and Dozier selected the two pictures of McCann as the perpetrator, and after viewing the entire photographic array reiterated their certainty that the two pictures were of the perpetrator of the crime. Given the totality of the circumstances, we find the record demonstrates that this photographic array was not impermissibly suggestive. Thus, the trial court properly admitted this evidence of the photographic identifications. As such, we need not separately analyze the bases for A.L.'s and Dozier's in-court identifications. *See Harris,* 716 N.E.2d at 410.

## II. Prosecutorial Misconduct— Closing Argument

### A. Rule of Law

■ Before this Court will consider a claim of prosecutorial misconduct, the defendant must have made a timely objection to the alleged misconduct at trial to secure that issue for review, as failure to so object waives the issue. *Stevens v. State,* 691 N.E.2d 412, 420 (Ind.1997) *cert. denied.* This rule applies to allegedly improper remarks made during closing argument. *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998) *reh'g denied.* However, a party may escape waiver of an issue, for failure to object, if the claimed error is fundamental in nature. *Id.* "Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process." *Id.*

### B. Analysis

In the instant case, McCann complains that the prosecutor engaged in misconduct in closing argument in several respects: "[b]y asserting her personal belief that her witness was being truthful[;] by misstating the role of defense counsel[;] and[,] by urging the jury to convict based on the Appellant's supposed personality." (Appellant's brief at 14.) Specifically, McCann references the following excerpts from the prosecutor's closing argument: (1) after summarizing the testimony of the victims, the prosecutor stated "they didn't ask for this. All they're asking is that you believe what they tell you." (Appellant's brief at 16; R. 553); (2) after summarizing Detective Cahill's testimony, the prosecutor stated "Detective Cahill, he's a good detective ... He does not refer to photos to individuals looking at them as mugshots ... He doesn't taint photo arrays in that way ... [he] doesn't want to present cases to the prosecutor that are on hedgy bets." (Appellant's brief at 16; R. 574–75); (3) commenting on the role of defense counsel, the prosecutor stated in part "there's a lot of smoke here ... [defense counsel's] job is to take you away from what you hear and point you to little details ..."; and, (4) commenting on McCann's character, the prosecutor stated "[McCann] didn't care whether [the victims] were dead or alive, because all that mattered to him was Mario McCann ... Because the only thing in this world that matters to Mario McCann is Mario." (Appellant's brief at 17; R. 579.) McCann did not object to any of these allegedly improper closing comments. Ordinarily, such a failure would cause these issues to be waived. *See Charlton,* 702 N.E.2d at 1051. Consequently, McCann argues that the prosecutor's statements amounted to fundamental error.

■ While considered as a whole the prosecutor's closing statements may have pushed the bounds of zealous advocacy, we find nothing about the statements to be so egregious as to rise to fundamental error. A "claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision." *Wrinkles v. State,* 690 N.E.2d 1156, 1171 (Ind.1997) *cert. denied.* The error must be so prejudicial to the rights of a defendant

as to make a fair trial impossible. *Id.* Here, any prejudicial impact caused by the prosecutor's statements taken individually or as a whole was minimal against the backdrop of A.L.'s and Dozier's identification testimony. McCann was not denied a fair trial.

### III. Attempted Rape—Instructions

#### A. Standard of Review

 The well-settled standard by which we review challenges to jury instructions affords great deference to the trial court. *State v. Snyder,* 732 N.E.2d 1240, 1244 (Ind.Ct.App.2000). Accordingly, the trial court's ruling will not be reversed unless the instructional error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Id.*

#### B. Analysis

Here, during final instructions, and over McCann's objection, the trial court read the following Attempted Rape instruction:

A person attempts to commit a crime when he knowingly engages in conduct that constitutes a substantial step toward the commission of the crime.

The crime of Rape is defined by statute as follows:

A person who knowingly has sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force commits rape. The offense is a Class A felony if it is committed while armed with a deadly weapon.

The elements of this offense are that the Defendant must:

1. Knowingly
2. Have sexual intercourse
3. With a member of the opposite sex
4. By compelling the other person with force or the imminent threat of force

5. While armed with a deadly weapon.

The term "sexual intercourse" as used herein means an act that includes any penetration of the female sex organ by the male sex organ.

(R. 128.) Following the analysis of our supreme court in *Richeson v. State,* 704 N.E.2d 1008, 1010 (Ind.1998), we proceed by comparing the trial court's instruction with the applicable statutes for Attempt and Rape.

 Indiana's attempt statute provides in part that "[a] person attempts to commit a crime when, *acting with the culpability required for the commission of that crime,* he engages in conduct that constitutes a substantial step toward the commission of the crime." IND.CODE § 35–41–5–1(a) (emphasizing the same language as in *Richeson* ). The culpability required for Rape is "knowingly or intentionally." IND. CODE § 35–42–4–1. This language of the Attempt statute and the applicable culpability for Rape, "knowingly or intentionally," mirror that considered by our supreme court in *Richeson.* In *Richeson,* the defendant faced a charge of Attempted Battery and the trial court instructed the jury that the requisite *mens rea* the State needed to establish was "knowingly or intentionally." *Richeson,* 704 N.E.2d at 1008. Our supreme court addressed the adequacy of the Attempted Battery instruction against the backdrop of *Spradlin v. State,* in which our supreme court held that an attempted murder instruction "must inform the jury that the State must prove beyond a reasonable doubt that the defendant, *with intent to kill* the victim, engaged in conduct which was a substantial step toward such killing." 569 N.E.2d 948, 950 (Ind.1991) (emphasis added). In *Richeson,* our supreme court held as follows:

We conclude that the special precautions we took in *Spradlin* are not warranted for lesser offenses. We hold, therefore, that the attempt statute permits an instruction that the jury may

convict upon proof that the defendant took a substantial step toward a *knowing* battery.

*Richeson,* 704 N.E.2d at 1011. Accordingly, the supreme court affirmed the defendant's conviction for Attempted Burglary. The Attempted Rape instruction given in this case dictates the same result, as it neither misstated the law nor misled the jury.

### IV. Sentencing

Finally, McCann asserts that the sentence he received as a result of his convictions was manifestly unreasonable "because the trial court erroneously considered aggravating factors; the trial court failed to find mitigating circumstances of an abusive childhood and undue hardships to dependents; and the trial court did not balance the aggravating and mitigating circumstances in its sentencing." Appellant's brief at 22.

### A. Standard of Review and Rule of Law

 Sentencing decisions rest within the sound discretion of the trial court, and we will review sentencing only for an abuse of that discretion. *Archer v. State,* 689 N.E.2d 678, 683 (Ind.1997). When enhancing a sentence, a trial court is required to state its specific reasons for doing so. *Georgopolus v. State,* 735 N.E.2d 1138, 1143 (Ind.2000). Accordingly, the trial court's sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating or mitigating; and (3) demonstrate that the trial court balanced the aggravating and mitigating circumstances and determined that the aggravators outweighed the mitigators. *Id.* In order to impose consecutive sentences, a trial court must find at least one aggravating circumstance. *Sanquenetti v. State,* 727 N.E.2d 437, 442 (Ind.2000). Aggravating circumstances may include, but are not limited to, any of several statutorily enumerated factors. IND.CODE § 35–38–1–7.1. "The trial

judge is responsible for determining the appropriate weight of aggravating and mitigating factors in sentencing." *Hurt v. State,* 657 N.E.2d 112, 115 (Ind.1995).

 Article 7, Section 6 of the Indiana Constitution charges this Court with the responsibility to review and revise sentences "to the extent provided by rule." Indiana Appellate Rule 17(B) in turn provides as follows:

> The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

A sentence is manifestly unreasonable when it is clearly, plainly and obviously so. *Evans v. State,* 725 N.E.2d 850, 851 (Ind. 2000). Moreover, inasmuch as the sentencing process is inherently subjective, this Court does not substitute its own judgment for that of the trial court. *Hurt,* 657 N.E.2d at 114.

### B. Analysis

 Here, McCann was sentenced to the maximum of fifty years for each of his three class A convictions. *See* IND. CODE § 35–50–2–4. The Attempted Murder conviction and Burglary conviction were ordered to run consecutively, and the Attempted Rape conviction to run concurrently. Thus, McCann was sentenced to a total executed sentence of one hundred years. The trial court supported the enhanced and consecutive sentences by identifying the following aggravators in its sentencing statement:

> One, the defendant has a prior history of criminal conduct. The Court considers just those matters contained in the presentence report which reduce to a conviction or true finding as a juvenile. Also, that prior attempts to rehabilitate the defendant have been unsuccessful ... Third, that the injuries to the victim, Mr. Dozier, have resulted in some permanent impairment to him. Fourth, ...

the facts of this case are particularly aggravating. The case involves a home invasion of a residence for the purpose of committing the crime of rape. That the defendant attempted this matter while she was pregnant. And that these offenses or series of acts involves multiple victims[.]

(R. 609.) We review the aforementioned sentencing statement by analyzing the trial court's reasoning for each alleged aggravator.

### 1. Criminal History

Ind.Code § 35–38–1–7.1(b)(2) provides that a person's history of criminal or delinquent activity may be used to support the finding of an aggravating circumstance to enhance a sentence. Because some statements of aggravating circumstances are merely conclusory they must be substantiated by specific facts. For example, if a defendant has a history of criminal activity, the incidents comprising such activity should be recited.

*Jones v. State*, 675 N.E.2d 1084, 1087 (Ind. 1996) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). Here, the trial court's reference to McCann's prior convictions and true adjudications as a juvenile, as contained in the pre-sentence report, adequately supports the trial court's use of McCann's criminal history as an aggravating circumstance. *See Allen v. State*, 722 N.E.2d 1246, 1252 (Ind.Ct.App. 2000) (quoting *Tunstill v. State*, 568 N.E.2d 539, 544 (Ind.1991)) (holding that "[t]he historical fact that a defendant has committed a crime, such that it may then be properly found to constitute the aggravator of a criminal history, may be established upon evidence that the defendant has been convicted of another crime, . . . .").

### 2. Rehabilitation

 The trial court also sought to invoke the correctional and rehabilitative treatment aggravating circumstance. *See*

Ind.Code § 35–38–1–7.1(b)(3). However, the trial court simply stated, "that prior attempts to rehabilitate the defendant have been unsuccessful." (R. 609.) We have consistently held that "for this aggravating circumstance to justify in part an enhanced sentence, it must be understood to mean that the defendant is in need of correctional and rehabilitative treatment that can best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term." *Culver v. State*, 727 N.E.2d 1062, 1072 (Ind.2000) *reh'g denied* (quoting *Mayberry v. State*, 670 N.E.2d 1262, 1271 (Ind.1996)). Here, the trial court did not articulate how such rehabilitation could be achieved through imposition of an enhanced sentence rather than the presumptive sentence. Thus, the trial court improperly applied this aggravating circumstance.

### 3. Permanent Injury to Attempted Murder Victim

 Thirdly, the trial court referenced the permanent nature of Mr. Dozier's injuries. We have previously recognized that the viciousness or seriousness of an injury is a proper aggravating circumstance. *See Benton v. State*, 691 N.E.2d 459, 465 (Ind. Ct.App.1998). Accordingly, the trial court's consideration of the extent of Mr. Dozier's injuries was proper.

### 4. Circumstances of Crime

 Elements of a crime cannot be used to enhance a sentence, however particularized circumstances of a criminal act *may* constitute separate aggravating circumstances. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996) (emphasis added). Here, the trial court gives a summary of the facts of the crimes and notes that A.L. was pregnant at the time McCann attempted to rape her. The trial court's summary merely tracks several of the elements of the crimes charged, and as such may not be used to enhance McCann's sentence. Moreover, we are unaware of Indiana precedent that would cause A.L.'s

state of pregnancy, *as a fact apparently unknown to McCann,* to be a proper aggravating circumstance. *Cf. Whitehead v. State,* 511 N.E.2d 284, 297 (Ind.1987) *cert. denied* (considering a trial court's finding that there was "no excuse or provocation which would justify Appellant's attack on a woman five months pregnant" in its determination that a sentence was not manifestly unreasonable.) From the Record, we are unable to discern the stage of A.L.'s pregnancy at the time of McCann's offenses, and therefore we are unable to infer McCann's knowledge of such pregnancy, an inference seemingly made, and accepted as a proper aggravator, by our supreme court in *Whitehead.*

### 5. Mitigating Factors

Lastly, McCann alleges that the trial court failed to consider as mitigating factors both his abusive childhood and the hardship that will result to his child from incarceration. As to the former, McCann concedes that "no evidence was given directly as to how these experiences affected [his] later actions," and as such the trial court was within its discretion not to consider this factor as mitigating. Appellant's brief at 26; *see Blanche v. State,* 690 N.E.2d 709, 715 (Ind.1998) (holding that evidence of a troubled childhood does not require a trial court to find it a mitigating circumstance). As to the latter, we fail to see the harm that would result to McCann's child from his continued incarceration, and the trial court was within its discretion not to consider this fact as mitigating. *See Smith v. State,* 670 N.E.2d 7, 8 (Ind.1996) (quoting *Wilkins v. State,* 500 N.E.2d 747, 749 (Ind.1986)) (holding that a trial court does not err when a mitigation claim is "highly disputable in nature, weight, or significance.")

### C. Conclusion

Here, the trial court relied upon four aggravators to arrive at its sentence for McCann. On review, we find two of these aggravators to be invalid. While it has been held that a single valid aggravator is sufficient to support an enhanced sentence, *Page v. State,* 689 N.E.2d 707, 712 (Ind.1997), we have not clearly discussed how long the enhanced sentence should be where the original sentence was based upon multiple aggravators and subsequent review reveals some of them to be invalid. Consequently, where, as here, it is unclear what weight the trial court assigned to each designated aggravator, and there are now fewer valid aggravating circumstances to consider, "we are not persuaded that the original sentence would have been the same had the trial court not relied on [such] impermissible factors...." *See Bluck v. State,* 716 N.E.2d 507, 515 (Ind.Ct.App.1999). To proceed by affirming the sentence, simply because we have said a single valid aggravator is sufficient to support an enhanced sentence, even though two of the four aggravators in this case have been determined to be invalid, is to impose our judgment for that of the trial court, which we have said we will not do. *See Hurt,* 657 N.E.2d at 114. Moreover, to affirm McCann's sentence based upon fewer aggravators than originally found by the trial court would be to place greater weight on the remaining two aggravators, which would effectively result in an upward revision of his sentence. We cannot revise, in either direction, a sentence under Indiana Appellate Rule 17(B) unless we determine that the original sentence imposed was manifestly unreasonable. Accordingly, we remand this case to the trial court so that that the two remaining valid aggravators may be weighed and an appropriate sentence reached. *See Miller v. State,* 709 N.E.2d 48, 50 (Ind.Ct. App.1999) (holding that where this Court could not determine the weight that the trial court assigned to invalid aggravators the case should be remanded for re-sentencing). In so doing, we seek to strike an appropriate balance between the responsibilities of this Court and those reserved

for the discretion of the trial court.[4]

Affirmed in part, and reversed and remanded in part.

SULLIVAN, J., concurring in part and dissenting in part with separate opinion.

VAIDIK, J., concurring in part and dissenting in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur with respect to Parts I, and II of the majority opinion. Except to the extent that my dissent would impact upon resentencing, I also concur as to Part IV. I respectfully dissent, however, as to Part III.

The majority relies upon *Richeson v. State* (1998) Ind., 704 N.E.2d 1008, in holding that the jury need not be instructed in an attempted rape case that the defendant have the intent to accomplish the crime of rape. To be sure, *Richeson* does state that "we expressly limit *Spradlin* to attempted murder." *Id.* at 1010. This is not to say, however, that the holding of *Richeson* is applicable to all attempt crimes except attempted murder. As a matter of fact, even in the factual setting of *Richeson*, an attempted battery case which could not have resulted in a conviction of any greater than a Class B felony, the court noted that the requisite *mens rea*, i.e., knowingly or intentionally, must be applied "to the attempted result, the battery itself" rather than to the substantial step. *Id.* at 1010 n. 4. In other words, in the context of the case before us, *Richeson* requires that the jury be informed that the defendant must have intended to achieve a knowing or intentional rape.

A different and more significant factor convinces me that *Richeson* did not hold that all attempt offenses other than attempted murder are excepted from a *Spradlin* type analysis. To be sure, *Richeson* embraced within its holding attempt prosecutions which involve "either stringent penalties, or ambiguity, but not both." *Richeson, supra,* 704 N.E.2d at 1011 (footnotes omitted). Presumably then, prosecutions which involve both an ambiguity in an instruction concerning the application of a requisite intent, *and* a felony carrying a "stringent penalty" are subject to a *Spradlin* type analysis.

The *Richeson* court went to great pains to note that the attempted murder conviction involved in *Spradlin* subjected the defendant to a "penalty that is two and one-half to *fifty times* higher than the penalty for attempted battery." *Id.* at 1011 (Emphasis in original). It is imperative to note that the attempted rape conviction here involved is a Class A felony and in this regard, is identical to the attempted murder conviction of *Spradlin*.

Therefore, while bound by the statement in *Richeson* that *Spradlin* is limited to attempted murder cases, *Richeson* does not preclude this court from applying an analogous principle, perhaps drawn from the wisdom of *Spradlin*, to cases substantially similar in consequence.[5] I would apply a principle analogous to that of *Spradlin* to cases which by instructions to the jury are likely to be confusing with respect to mens rea and intent and which involve a penalty for a Class A felony. This

---

**4.** Because we remand for re-sentencing, we do not reach the issue of whether McCann's sentence is manifestly unreasonable.

**5.** In discussing varying case definitions of "specific intent," *Richeson* cites to *Wells v. State* (1991) Ind.App., 568 N.E.2d 558 for the proposition that "[i]n the attempted rape context, specific intent has meant that the defendant must have taken a substantial step toward the commission of a knowing or intentional rape, but not a reckless one."

*Richeson, supra,* 704 N.E.2d at 1009 n. 1. This citation should not give rise to an inference that an attempted rape defendant, facing sentencing for a Class A felony, need not have intended to achieve a knowing or intentional rape. *Wells* was decided before the decision in *Spradlin* was issued, and it merely applied generally then understood concepts of "knowingly or intentionally" with respect to jury instructions.

is such a case and for that reason I would reverse the attempted rape conviction and remand for a new trial upon that charge.

VAIDIK, Judge, concurring in part, and dissenting in part.

I agree with the majority opinion in all respects, except sentencing. I agree that the trial court properly considered the aggravating circumstances of the defendant's prior criminal history and the permanent injury that the defendant caused to the attempted murder victim. I also agree that the trial court was within its discretion when it failed to find as mitigating factors both the defendant's abusive childhood and the hardship that would result to his child from his incarceration.

However, I do not agree with the majority that an attempted rape victim's pregnancy may not be used as an aggravating circumstance when the record is unclear as to whether or not the defendant knew of her condition. Additionally, I disagree with the majority's conclusion that this case should be remanded to the trial court for re-sentencing.

First, the trial court was within its discretion to find as an aggravating circumstance that the victim of the attempted rape was pregnant at the time of the commission of the offense. A defendant takes a victim as he finds her. For example, IND.CODE § 35–38–1–7.1(b)(6) states that a court may consider as an aggravating circumstance that "[t]he victim of the crime was mentally or physically infirm." Likewise, the age of a victim may also be considered as an aggravating circumstance. IND.CODE § 35–38–1–7.1(b)(5). Nothing in the statute requires that the defendant know of the infirmity or age of the victim before these factors may be used as aggravating circumstances. Furthermore, when properly explained, victim impact may be an appropriate aggravating circumstance. *Smith v. State*, 695 N.E.2d 909, 911 (Ind.1998). It is reasonable to presume that the impact of an attempted rape would be greater on a pregnant victim. Thus, in this case, it was within the trial court's discretion to consider the pregnancy of the victim as an aggravating circumstance.

The majority states "we are unaware of Indiana precedent that would cause [the victim's] state of pregnancy, *as a fact apparently unknown to McCann*, to be a proper aggravating circumstance." *Op.* at 1006 – 07. Similarly, I am unaware of Indiana precedent that would preclude the victim's pregnancy to be considered as a proper aggravating circumstance. The majority maintains that in *Whitehead v. State*, 511 N.E.2d 284 (Ind.1987), *cert. denied*, our supreme court inferred that a victim's pregnancy must be known to a defendant before it is appropriate to use her pregnancy as an aggravating circumstance. I cannot agree. Rather, the supreme court merely provided that it was appropriate for a trial court to find "no excuse or provocation which would justify [the defendant's] attack on a woman five months pregnant." *Whitehead*, 511 N.E.2d at 296. I do not read the same inference into the supreme court's statement as the majority apparently does.

Second, I disagree with the majority when it remands this case to the trial court for re-sentencing. Even if the victim's pregnancy is not a proper aggravating circumstance, the majority concedes that there were two valid aggravators. A single aggravator is sufficient to support a sentence. *Casey v. State*, 676 N.E.2d 1069, 1073 (Ind.Ct.App.1997). Moreover, when a trial court improperly applies an aggravator, but other valid aggravating circumstances exist a sentence enhancement may still be upheld. *See Blanche v. State*, 690 N.E.2d 709, 715 (Ind.1998). Here, given the three proper aggravators, the lack of any mitigating factors, and the heinous nature of this crime, I would affirm the trial court's sentence.